IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 20, 2012 Session

## JIMMY DILL v. CITY OF CLARKSVILLE, TENNESSEE, ET AL.

### Appeal from the Circuit Court for Montgomery County
### No. MCCHCVDT105    Michael R. Jones, Judge

### No. M2012-00356-COA-R3-CV - Filed November 6, 2012

Former police officer sought certiorari review of the City of Clarksville's decision to terminate his employment, contending that the City failed to follow the disciplinary procedure set forth in the City Code and that, as a consequence, his termination deprived him of due process of law. The trial court held that there was material evidence to support the decision to terminate petitioner and returned the case to the City to have the head of the human resources department conduct a review of the investigation and appropriateness of the penalty; following a report from the head of the human resources department, the court entered a final order granting judgment to the City. Concluding that the failure of the City to follow its disciplinary procedure deprived petitioner of his due process right, we reverse the judgment, vacate the termination and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, P. J., M. S., filed a concurring opinion.

Peter M. Napolitano, Clarksville, Tennessee, for the Appellant, Jimmy Dill.

W. Timothy Harvey, Clarksville, Tennessee, for the Appellee, City of Clarksville, Tennessee.

### OPINION

Jimmy Dill was employed as a police officer with the City of Clarksville for 23 years until his termination on August 9, 2010. On August 4, 2010, Mr. Dill was presented a memorandum advising him that Lieutenant Gary Hurst of the Clarksville Police Department had found that Mr. Dill had violated certain General Orders of the department and provisions of the City Code in an incident on July 9, 2010. The memorandum also advised Mr. Dill that

he had been scheduled for a "pre-decision discussion" with Chief of Police Alonzo Ansley to be held on August 9, and that he had the opportunity to present statements, witnesses, or other information relative to the charges at the meeting. The meeting was conducted on August 9 and, in the course of the meeting Mr. Dill was presented with a Notice of Discipline terminating his employment, effective that day; the notice advised Mr. Dill of his right to appeal the disciplinary action to the City of Clarksville Human Resources Department, pursuant to Chapter 13, Sec. 1-1316 (hereinafter "Code § 1-1316") of the Clarksville City Code.[1]

On August 17, 2010, Mr. Dill appealed his termination to the Mayor of Clarksville, Johnny Piper, asserting that the procedure leading to his termination violated his rights to due process as provided under Code § 1-1316 and was not supported by substantial evidence.[2] On September 3 Mayor Piper sent Mr. Dill a letter stating that he had conducted a "thorough review of the department head's decision and the information it was based upon[,]" and had determined that there was material evidence to support the disciplinary action; Mayor Piper affirmed the decision to terminate Mr. Dill.

On October 27, 2010, Mr. Dill filed a Petition for Writ of Certiorari Review in Montgomery County Chancery Court; he alleged that his termination and the denial of his appeal by Mayor Piper were "arbitrary, capricious, unsupported by material evidence and exceeded the authority of the deciding officials." The court issued the writ and on December 28, 2010, the administrative record, consisting of the investigative file concerning the July 9, 2010 incident and redacted copies of Mr. Dill's personnel and Human Resources files, was filed with the court.

On August 15, 2011, the court issued an opinion which stated in part:

The Petitioner did receive notice of the charges against him in full detail through the report of August 2, 2010, and signed by the Petitioner o[n] August 3, 2010. The Petitioner was given a brief period of time to prepare to answer charges and/or present information which might influence the disciplinary

---

[1] Review of the current Clarksville City Code indicates that Code § 1-1316 was recodified subsequent to the events in this appeal and is currently Code § 1.5-1001; the current section also includes some minor amendments to the wording of Code § 1-1316, none of which are pertinent to the issues in this appeal. For the sake of continuity, we will refer to Code § 1-1316 in this opinion.

[2] Code § 1-1316(f)(1)(b) provides that an employee who has been disciplined has ten days to appeal the discipline to the head of the City human resources department in writing. Mr. Dill's letter to Mayor Piper recited that "I presented this appeal to the Human Resources Manager/Department at City Hall on August 17, 2010 by hand in person."

decision. There is nothing in the record or the pleading to indicate that the Petitioner desired more time prior to the pre-decision hearing. Chief Ansley is the department head. The Petitioner was afforded the opportunity to present information to the Chief regarding the disciplinary action under consideration. The Petitioner was afforded the opportunity to present written statements from witnesses, to present his own written or oral statement and to present any other relevant information with regard to the charges. There is no indication in the record or the pleading that the Petitioner desired for any other person to attend and participate in the pre-decision hearing. The procedure did provide notice and an opportunity to respond. The video did not allow the Petitioner to contest the facts including his speed, passing on left, speeding through intersections, foul language and all the other allegations of misconduct. Minimum due process under Sec. 1-1316(c) is satisfied as well as the requirements of constitutional due process.

Section 1-1316(f)(1)(b) provides that allegations of employee misconduct must be throughly investigated and documented. Certainly the record established a thorough investigation and documentation of the investigation. Prior to the decision on any discipline, the employee must be given due process. As stated above, due process requirements were met. After the hearing and the appropriate department head has determined what discipline to impose, the department head will forward the results of the investigation and decision to the human resources department head. It is [the] duty of the human resources department head to determine if the employee was afforded due process and that the discipline is appropriate and generally consistent. This must be read in the context of Sec. 1-1316(b) Fair Treatment. "Discipline will be equally applied and, to the context possible, will be consistent and progressive in nature."

The circumstantial evidence clearly established that after the pre-decision hearing that the decision was not referred to the human resources department head.

The question then becomes whether the court should return the case to the City of Clarksville for the human resources department head to make a determination even though due process does not require the review by the human resources department head. Does the Petition for Writ of Certiorari reach to a violation of the City Code?

-3-

It is the opinion of this court that the failure to follow the rules set forth by Sec. 1-1316(f)(1)(b) demands that the court send this matter back to the City of Clarksville for that determination. The termination of the Petitioner meets the requirements of due process and is effective as of August 9, 2011, subject to human resources reviews.

On September 6 the City filed a motion requesting that the Court enter a final Order reflective of its Memorandum Opinion. On October 5, Mr. Dill filed a motion requesting that the court clarify the August 15 opinion; on October 17, the City filed a response joining in Mr. Dill's motion. The City's response stated further that the City had, upon receiving the August 15 opinion, forwarded the opinion and Mr. Dill's files to the human resources department head for review. Attached to the response was an unaddressed letter dated September 19, 2011 from Mr. Will Wyatt, Director of City of Clarksville Human Resources Department, stating that Mr. Wyatt had reviewed the documentation provided by Chief Ansley in the termination of Mr. Dill, that Mr. Dill had been afforded due process, and that the discipline of termination imposed on Mr. Dill was appropriate and generally consistent.

On January 19, 2012, the trial court issued two Orders. In the first order the court granted the City's September 6 Motion for Final Order and denied Mr. Dill's October 5 Motion for Clarification, stating, with respect to Mr. Dill's motion, that the court believed "its original Opinion is dispositive on all issues, and the Court adopts as its Findings of Fact the Court's comments made at the hearing in open Court on November 30, 2011." The Order also stated that "[t]he entry of this Order will constitute a Final Order dispositive of all issues by and between all parties pending."

The second order stated in pertinent part:

1. This cause came to be heard on August 4, 2011, and upon review of all of the pleadings filed herein and the technical record, and arguments and statements of counsel, the Court issued an Opinion dated August 15, 2011.
2. As a finding of fact, the Opinion of the Court issued on August 15, 2011, is adopted by this Court as a finding of fact herein, subject to the correction of a typographical or clerical error which is found in the final sentence of the Opinion. The final sentence of the Opinion reads as follows: "The termination of the Petitioner meets the requirements of due process and is effective as of August 9, 2011, subject to human resources review." The final sentence, as corrected by this Order, and as a finding of fact, should read as follows: "The termination of the Petitioner meets the requirements of due process and is effective as of August 9, 2010, subject to human resources review."

-4-

3. It is therefore the Order of this Court that based upon the findings of fact herein, the Respondent is directed to refer to the Human Resources Department head the Pre-Decision Hearing and termination of the Petitioner herein, Jimmy Dill, by Chief Ansley, and complete the review of Chief Ansley's discipline in the context of 1-1316(b), and upon such review, if the discipline meets the requirements of the same based upon a review by the Human Resources Department head, the termination of the Petitioner is effective as of August 9, 2010.

4. This is a final Order dispositive of all issues between the parties.

Mr. Dill filed a notice of appeal on February 13, 2012; he articulates the following issues on appeal:

1) The trial court erred in its findings by failing to properly consider and apply all elements of common law and/or statutory review.

2) The trial court erred by refusing to consider relevant evidence.

*Scope of Review*

Tenn. Code Ann. § 27-8-101, which codified the writ of certiorari at common law, provides for judicial review of the decision of an inferior board, tribunal, or officer functioning in a judicial capacity.[3] Review of the lower tribunal's decision is limited to whether the inferior body exceeded its jurisdiction or acted "illegally, arbitrarily, or fraudulently." *Polite v. Metro. Dev. & Hous. Agency*, 2008 WL 3982915, at *2 (Tenn. Ct. App. August 26, 2008) (citing *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d. 871. 873 (Tenn. Ct. App. 1994). Review also includes an inquiry as to whether any material evidence existed to support the inferior body's decision. *Id.* (citing *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2001). The scope of review under the common law writ is not a "look [at] the intrinsic correctness of the administrative decision but [at] the procedure in which the decision was reached." *Id.* (citing Powell, 879 S.W.2d at 873.

---

[3] Tenn. Code Ann. § 27-8-101 states:

The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

*Discussion*

In the certiorari petition and on appeal, Mr. Dill contends that his right to due process of law was violated in the manner in which he was terminated; due process is a question of law which we review *de novo*. *Daugherty v. Tenn. Bd. of Prob. & Parole*, 2005 WL 229866, at *1 (Tenn. Ct. App. January 28, 2005).

Code § 1-1316 (c) grants City employees "minimum due process" in connection with disciplinary actions and states that "[d]ue process requires that established rules and procedures for disciplinary actions are followed and that employees have an opportunity to respond to charges made against them prior to the decision on the disciplinary action to be taken."[4] Code § 1-1316(f)(1)(b)[5] sets out the disciplinary process the City must follow when

---

[4] Code § 1-1316 (c) states:

All regular employees will be afforded the benefit of due process. Due process requires that established rules and procedures for disciplinary action are followed and that employees have an opportunity to respond to charges against them prior to the decision on the disciplinary action to be taken. Due process consists of the following:
(1) Employees shall be notified of charges against them. Such notification shall detail times, places, and other pertinent facts.
(2) The notification will provide for the employee to have a pre-decision discussion. The employee shall be given a reasonable period of time to prepare to answer charges and present information which might influence the disciplinary decision.
(3) The person conducting the pre-decision discussion will be a department head or the senior supervisor in the employee's work unit.
(4) The meeting outlined above shall be for the purpose of allowing the employee to present information to the manager regarding the disciplinary action under consideration.
(5) The discussion shall be informal. The employee shall have the right to present written statements from witnesses, or his or her own written or oral statement, or any other relevant information with regard to the charges. Attendance and participation by persons other than the department head and the employee shall be at the discretion of the department head.
(6) If the employee declines the opportunity to have the discussion or present information, the provisions of this section are deemed to have been met.

[5] Code § 1-1316(f)(1)(b) states:

b. Except as provided in subsection (f)(1)c., allegations of employee misconduct which could warrant reduction in pay, suspension without pay, demotion, or termination, will be thoroughly investigated and documented at the department level. Prior to the decision on any discipline by the department head, the employee will be afforded due process as set forth in [Code 1-1316(c)]. Upon completion of the investigation and application of due process, the department head will decide whether to impose discipline, and what discipline to impose. If the department head decides to impose discipline of reduction in pay,

(continued...)

-6-

imposing discipline on employees other than department heads or city officials; prior to discipline being imposed, the head of the department taking the action must "first forward the results of his or her investigation and decision, with all supporting documentation or materials, to the human resources department head. The human resources department head will verify that the employee was afforded due process, and that the discipline is appropriate and generally consistent."

The record shows that Chief Ansley did not forward the materials accumulated in the investigation of Mr. Dill to the human resources department prior to making the decision to terminate him, as required by Code § 1-1316(f)(1)(b).[6] The failure to follow the disciplinary procedure violated Mr. Dill's right to due process of law, as due process is defined in the Code, and the trial court's subsequent return of the matter to the City of Clarksville was inadequate to cure the deprivation. Mr. Dill is entitled to relief.

We do not agree with the trial court's statement that "minimum due process under Sec. 1-1316(c) is satisfied as well as the requirements of constitutional due process." While the record shows that Mr. Dill was given notice of the charges against him and an opportunity to be heard, it is the failure of the City to follow the disciplinary procedure set forth in the Code that deprived Mr. Dill of due process. We have reviewed the documents in the administrative record, as supplemented with the CD/DVD filed with the trial court; there is material evidence in support of the decision to discipline Mr. Dill. The failure to refer the matter to the head of the human resources department prior to making the decision to terminate Mr. Dill, however, not only violates the Code but deprives the court of the

---

[5](...continued)
suspension without pay, demotion, or termination, the department head will first forward the results of his or her investigation and decision, with all supporting documentation or materials, to the human resources department head. The human resources department head will verify that the employee was afforded due process, and that the discipline is appropriate and generally consistent. Upon such finding, the human resources department head will so notify the appropriate department head of the employee. The department head will then inform the employee in writing of the discipline decision, and will advise the employee of his or her right to appeal. The employee will have ten (10) calendar days to appeal the decision by notifying the human resources department head in writing. If the employee does not appeal the discipline decision, or does not appeal in a timely manner, the discipline shall become final.

[6] On the audio recording of the afternoon session of the pre-decision discussion, Chief Ansley states that "I've given this much thought. I've followed policy. I've called the HR director." At oral argument, counsel for the City acknowledged that there was "nothing more" than the call referenced by Chief Ansley relative to the requirement in the code that the department head (here, Chief Ansley) "forward the results of the investigation and decision, together with supporting documentation or materials."

opportunity on certiorari review to determine whether the penalty was imposed in an arbitrary or capricious manner.[7]

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed and the decision to terminate Mr. Dill is vacated. The case is remanded to the trial court with instructions to remand the case to the City of Clarksville for a determination of whether his proposed termination complies with Code § 1-1316(b).

_____
RICHARD H. DINKINS, JUDGE

---

[7] Code § 1-1316(b) provides that "[e]mployees of the city shall be treated fairly in all aspects of employment[,]" that any disciplined imposed "will be applied at the appropriate level[,]" and that discipline "will be equally applied and, to the extent possible, will be consistent and progressive in nature." We have reviewed the transcript of the hearing on pending motions held on November 30, wherein Mr. Dill, through counsel, raised the issue of whether "the discipline proposed by Chief Ansley, termination, would be a consistent application of the disciplinary process given the charges against Officer Dill." We do not agree with the court that Mr. Dill was given the opportunity to address the issue of consistency of discipline; the return of the case to the city to allow for review by the head of the human resources department did not comply with the disciplinary process and did not afford Mr. Dill the opportunity to present evidence bearing on the issue. Moreover, the September 19, 2011 letter from Mr. Wyatt stated, without elaboration, that "the discipline of termination was appropriate and generally consistent." This is insufficient to support a finding that Mr. Dill's termination was in accordance with Code § 1-1316(b).